**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Mirella Tamayo Puga and Martin Puga, | ) | No. CV09-2501-PHX-NVW |
| Plaintiffs, | ) | **ORDER** |
| vs. | ) | |
| One West Bank, et al., | ) | |
| Defendants. | ) | |

Before the Court is Defendant OneWest Bank, FSB's Motion to Dismiss Plaintiffs' Second Amended Complaint (doc. # 19).

**I.   Background**

For this motion to dismiss, Plaintiffs' allegations of material fact are assumed to be true and construed in the light most favorable to them. *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Stated here are the allegations of the Second Amended Complaint, and the Court does not determine whether they are true.

As alleged, Defendant OneWest Bank ("OneWest") is a national banking institution authorized to do business in the State of Arizona. Defendant IndyMac Federal Bank, FSB ("Defendant IndyMac") is a banking institution chartered as a bridge between the defunct IndyMac Bank, FSB ("IndyMac Bank"), and OneWest, the current owner of the remnants of Defendant IndyMac. Defendant IndyMac is an insolvent banking

1    institution under receivership. Defendant IMB REO, LLC ("IMB") is an affiliate or
2    owned subsidiary of OneWest.
3          In June 2007, Plaintiff Mirella Tamayo Puga ("Mrs. Puga") borrowed funds from
4    IndyMac Bank to build a six-bedroom home on a lot located on North 185th Avenue,
5    Waddell, Arizona 85355, which she and her husband had previously purchased for
6    $60,000 (the "Property"). In applying for the loan, Mrs. Puga submitted information
7    about her income of $15.00 per hour and no information about her husband. In return for
8    a loan of $820,000.00, Mrs. Puga signed an adjustable rate note ("Note") promising to
9    repay the loan plus interest. She is the only obligor on the Note. Mr. and Mrs. Puga
10   signed a Deed of Trust as husband and wife, which appointed LandAmerica Transnation
11   Title as Trustee and "irrevocably grants and conveys to Trustee, in trust, with power of
12   sale," the Property, including all improvements made or to be made on the Property.
13         Mrs. Puga defaulted on the loan. The Notice of Trustee's Sale, dated June 8, 2009,
14   identifies the successor trustee as Quality Loan Service Corporation and the current
15   beneficiary as IndyMac Bank. On October 6, 2009, the Property was sold for $352,500 at
16   a trustee's sale to IMB, which is identified in the Trustee's Deed Upon Sale as the
17   foreclosing beneficiary. The designated trustee was Quality Loan Service Corporation.
18   The assignment of the Deed of Trust for the Property to OneWest from the Federal
19   Deposit Insurance Corporation ("FDIC") as receiver for Defendant IndyMac is dated
20   February 17, 2010.
21         On October 14, 2009, Mrs. Puga filed a complaint against OneWest and Defendant
22   IndyMac in the Maricopa County Superior Court. On December 1, 2009, OneWest
23   removed the case to this Court. On December 8, 2009, OneWest moved to dismiss the
24   case. On December 29, 2009, Mrs. Puga filed her First Amended Complaint. On January
25   25, 2010, OneWest again moved to dismiss the case. The Court dismissed with prejudice
26   a count alleging violation of both the Real Estate Settlement Procedures Act and the Truth
27   in Lending Act and dismissed the remaining counts with leave to amend.
28

The Second Amended Complaint filed April 1, 2010, names Mr. Puga as a second plaintiff, but is verified by only Mrs. Puga. (Doc. # 20.) Mr. Puga did not sign the Second Amended Complaint, and it does not appear from the face of the Second Amended Complaint that Mr. Puga is represented by Mrs. Puga's counsel.

The Second Amended Complaint includes the following counts: (1) Breach of Contract – Covenant of Good Faith and Fair Dealing, (2) Fraud, (3) Negligent Misrepresentation, (4) Declaratory Judgment, (5) Quiet Title, and (6) Rescission. On April 19, 2010, OneWest moved to dismiss the Second Amended Complaint. (Doc. # 19.) On May 6, 2010, Mrs. Puga responded to OneWest's motion to dismiss. (Doc. # 20.) No response from Mr. Puga has been filed. On May 17, 2010, OneWest filed its reply. (Doc. # 21.)

**II.  Legal Standard**

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To avoid dismissal, a complaint must contain "only enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

First, the Court must identify allegations in the complaint that are not entitled to the assumption of truth. *Id.* at 1949, 1951. The principle that a court accepts as true all of

the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations. *Id.* at 1949, 1951.

Second, the Court must determine whether the factual allegations plausibly suggest an entitlement to relief. *Id.* at 1950, 1951. This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. To show that the plaintiff is entitled to relief, the complaint must permit the court to infer more than the mere possibility of misconduct. *Id.*

Generally, material beyond the pleadings may not be considered in deciding a Rule 12(b)(6) motion. However, material properly submitted as part of the complaint and documents not physically attached to the complaint whose contents are alleged in a complaint and whose authenticity no party questions may be considered. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

**III. Analysis**

    **A. Count I: Breach of Contract – Covenant of Good Faith and Fair Dealing**

"The law implies a covenant of good faith and fair dealing in every contract," which requires that "neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986). Count I of the Second Amended Complaint does not allege that Mrs. Puga did not receive the loan she was promised or that she was prevented from using the loan proceeds to build a house as she had intended. It does not allege that any of the Defendants did something after the contract was executed that prevented her from obtaining the benefits that were expected to flow from the contract. It does allege that Mrs. Puga defaulted on the loan.

Count I alleges that Mrs. Puga intended to have monthly payments of $4,000 or less, the maximum interest rate on the loan was 12.95%, she did not know the amount of

- 4 -

her monthly payment when she signed the Note, and the initial loan payment, including principal, interest, taxes, and insurance, was approximately $5,300. It further alleges that Defendant IndyMac "knowingly set the payment amount at an amount that would injure Plaintiff's right to receive the benefit of her bargain and did not disclose the payment amount to her in advance of signing the note."

Although Defendant IndyMac is the entity that Mrs. Puga alleges knew or should have known that she could not afford the payment determined under the terms of the Note, Mrs. Puga alleges that because OneWest is the entity that foreclosed on the Property, OneWest holds Defendant IndyMac's obligations under the Note. Mrs. Puga also alleges that although there is no pre-sale assignment of the Note and Deed of Trust from IndyMac Bank to OneWest, IMB, or any other entity, "IMB (a OneWest company) appears to be identical to IndyMac, or in possession of IndyMac's assets and obligations, since only the beneficiary may foreclose on real property." Nevertheless, the relationships and transfers of assets and liabilities among the various entities need not be determined to decide that Mrs. Puga has not stated a claim for breach of the implied covenant of good faith and fair dealing by any of the Defendants.

Therefore, Count I will be dismissed for failure to state a claim upon which relief can be granted.

**B.    Count II:  Fraud**

Count II alleges that "IndyMac fraudulently induced Plaintiff into entering into the loan at issue by implicitly and explicitly representing that she qualified for and could pay for the loan at issue" and "Defendants knew or should have known that Plaintiff could not afford the loan, and yet made the loan." Count II alleges that Mrs. Puga "relied on IndyMac to give her a loan that she could afford, and believed that the lender would tell her if she didn't qualify for an affordable term." It further alleges she "had a right to rely on the fact that Indy Mac should not make a loan that she could not repay." Mrs. Puga offers no authority to support her legal theory that a lender commits fraud, without

making any false statements, by making a loan to an applicant without advising her not to accept the loan she seeks.

Although no specific language is required in pleading fraud, elements constituting fraud must be found considering the pleading as a whole. *Spudnuts, Inc. v Lane*, 131 Ariz. 424, 426, 641 P.2d 912, 914 (Ct. App. 1982). Arizona law requires proof of nine elements of fraud: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely on it; and (9) the hearer's consequent and proximate injury. *Marcus v. Fox*, 150 Ariz. 341, 344, 723 P.2d 691, 693 (Ct. App. 1985), *vacated in part by* 150 Ariz. 333, 723 P.2d 682 (1986). In essence, Mrs. Puga contends the elements of fraud are satisfied by alleging IndyMac gave her an $820,000 loan but failed to tell her that if she had no assets or income other than her $15.00/hour job, she could not afford an $820,000 loan, and if IndyMac gave her a loan for $820,000 based on the income information she supplied, then she had the right to rely on the loan offer as communicating that she would be able to repay the loan under its stated terms—which constituted an implied false representation. But a lender's willingness to provide a loan does not assure a borrower that she will be able to satisfy the loan's repayment terms; it represents only that the borrower meets the lender's conditions for the loan, however minimal they may be. She had no right to rely on any representation implied by IndyMac's loan offer to her.

Therefore, Count II will be dismissed for failure to state a claim upon which relief can be granted.

**C.     Count III: Negligent Misrepresentation**

For Count III, the Second Amended Complaint alleges only the following: "To the extent that any acts by Defendants in Count II above constitute negligence rather than intention[al] conduct; said conduct as set forth constitutes Negligent Misrepresentation."

For reasons stated regarding Count II, Count III also will be dismissed for failure to state a claim upon which relief can be granted.

### D. Count IV: Declaratory Judgment, Count V: Quiet Title, and Count VI: Rescission

Counts IV (Declaratory Judgment), V (Quiet Title), and VI (Rescission) seek relief based on Plaintiff prevailing on one or more of the other claims. As pled, both the contract and the fraud claims must be dismissed, and the Second Amended Complaint does not include any other substantive basis for granting Mrs. Puga the relief sought in Counts IV, V, and VI.

The Second Amended Complaint does not allege a cause of action based on the failure to record documents regarding the transfer of beneficial interest in the Note before the trustee's sale. Instead, in Count V (Quiet Title), it alleges that either (a) one of the Defendants, whichever was the appropriate beneficiary at the time of the trustee's sale, is subject to Mrs. Puga's claims, or (b) the trustee's sale was invalid:

> 51. IMB has represented itself as the beneficiary of the note. Either IMB (and therefore OneWest Bank) was the appropriate beneficiary at the time of the sale (and therefore shares the identity of IndyMac Bank, FSB and is subject to the claims set forth herein); or it was not the beneficiary, in which case the purported sale is invalid.
>
> . . . .
>
> 53. In [the Corporate Assignment of Deed of Trust], IndyMac Federal Bank, FSB purports to be the holder of the Deed of Trust and to transfer its interest to Defendant OneWest. If the purported Trustee's Deed is valid, the attempted assignment is a nullity, as the sale extinguished all rights under the Deed of Trust. A.R.S. § 33-811(E). If however, IndyMac Federal Bank, FSB remained the holder at all relevant times, then the purported transfer by Trustee's sale to IMB REO, LLC is invalid, the sale was improper and should be reversed, with title restored to Plaintiffs.

(Doc. # 18.) Both parties' briefs discuss matters beyond the record concerning these allegations. Count V on quiet title does not state any claim upon which relief can be granted, but Plaintiff will be given one last chance to amend Count V to attempt to state a claim.

Therefore, Counts IV, V, and VI will be dismissed for failure to state a claim upon which relief can be granted.

### IV. Leave to Amend

Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). But, "[l]eave need not be granted where the amendment of the complaint would cause the opposing party undue prejudice . . . or creates undue delay." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). The district court's discretion to deny leave to amend a complaint is "especially broad" where the plaintiff already has had one or more opportunities to amend his complaint. *Id.* at 1161. "Leave to amend need not be given if a complaint, as amended, is subject to dismissal." *Moore*, 885 F.2d at 538. "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

Mrs. Puga has unsuccessfully amended her complaint twice. There is no basis for concluding that further amendment likely will correct the Second Amended Complaint's deficiencies, except for Count V. The Second Amended Complaint therefore will be dismissed without leave to amend, except for Count V.

IT IS THEREFORE ORDERED that Defendant OneWest Bank, FSB's Motion to Dismiss Plaintiffs' Second Amended Complaint (doc. # 19) is granted.

IT IS FURTHER ORDERED that the Second Amended Complaint (doc. # 18) is dismissed with prejudice for failure to state a claim upon which relief can be granted, except for Count V, as to which Plaintiff may file an amended complaint by June 16. If no further amended complaint is filed by June 16, 2010, the Clerk shall then enter judgment dismissing this action with prejudice and shall terminate this case.

DATED this 2nd day of June, 2010.

_____
Neil V. Wake
United States District Judge